## Jackson, *ex dem.* Ludlow and others, *against* Myers.

A writing in the form of articles of agreement, and containing a covenant to convey lands, and concluding with a penalty for the non-performance of the covenant, though it contained words of bargain and sale, or an absolute conveyance in *presenti*, to one of the parties and his heirs, was held to amount to no more than an agreement to convey. The intent of the parties, when apparent, and not repugnant to any rule of law, will controul the technical words used in an instrument.

A bargain and sale of land to A. " to hold the same to A. in trust for B. and C. their respective heirs and assigns forever, in fee-simple," creates only a life estate in A. and at his death, the legal estate reverts to the heirs of the grantor ; and B. and C. can only resort to a court of equity to enforce the trust. A use in a bargain and sale can be limited only to the bargainee, who cannot be seised to any other use than his own. When the plaintiff in ejectment claims to recover on the ground of prior possession, that possession must be clearly and unequivocally proved. The payment of taxes, and the execution of partition deeds, are not evidence of an actual possession, though they may show a claim of title.

THIS was an action of *ejectment*, for lands in the town of *Poughkeepsie*, in the county of *Dutchess*, and part of a tract called the *Whitehouse Tract.*

The cause was tried at the circuit in *Dutchess* county, before Mr. Justice *Thompson*, in *September*, 1807.

It was admitted, that the defendants possessed part of the premises at the commencement of the suit.

The plaintiffs proved that *William Ludlow* took possession of the premises in the spring of 1776, and remained thereon a year or two ; that after he left the property, one *M'Dougle* went into possession of the premises, and continued thereon until the year 1780 ; that one *Lewis* was in possession after *M'Dougle*, who said that he held under the *Ludlows* ; that in 1783, one *Chamberlain* was in possession, and after him others ; that in 1787, one *Joshua Carman* was in possession, who said, in 1793, that he held under the *Ludlows.* He remained in possession until the year 1794, when he surrendered it to the *Ludlows.* It was under-

stood by a witness, that *Chamberlain* held under the *Ludlows*, though *Chamberlain* did not say so. An agent for the *Ludlows* had the charge of the property, and in 1798, paid the arrears of taxes for several antecedent years, as such agent, and has paid them regularly since. After *Carman* left the place, the fences were removed, and the premises lay vacant and uninclosed, until one *French* took possession, about two years before the trial. One *Lawrence Van Kleeck* was in possession about 40 years before the trial, and so remained until his death, which was in 1770 or 1771. His eldest son, *Baltus*, succeeded to the possession on the death of his father, built a barn on the premises, and continued there until *William Ludlow* went into possession. *William Ludlow* died in 1784, and left *Carey*, and *William W.* (two of the lessors) and *George*, and *Gabriel W.* his sons and heirs. *George* died in 1797, without issue, and *Gabriel W.* died in *February*, 1805, leaving the three other lessors, his children and heirs. The defendant was in possession of a part of the premises under *Jane Van Kleeck*, about three or four years before the trial.

The plaintiff further proved a *partition*, in 1798, of the tract, under the statute, between *Gabriel Ludlow*, *William Ludlow*, and *Carey Ludlow*, of the one part, and the heirs and devisees of *Leonard Van Kleeck* of the other part, by which partition, 50 acres of one tract was set apart to the *Ludlows*, and the other moiety of it left undivided between them and the heirs of *Leonard Van Kleeck*. A lot containing 27 acres was also divided between the *Ludlows* and the heirs of *Van Kleeck*. In 1799, a further partition was made of the remaining moiety, between the *Ludlows* and the heirs of *Van Kleeck*, by which the former took three-fifths.

The defendant read in evidence an agreement between *William Ludlow* and *Baltus Van Kleeck*, dated *January* 31, 1776, which was an agreement to let the place for one year, on paying the rent and taxes.

The defendant further proved, that in 1774, the premises were in possession of *Baltus Van Kleeck*, who built a house thereon, and his son, *Lawrence Van Kleeck*, resided there until the winter of 1775 or 1776, and remained there a year, when he left the place; that *M'Dougle* went into possession after *Ludlow*; that *Chamberlain* was in possession about the year 1784 and 1785; that *Baltus Van Kleeck* died in 1784; and in the autumn of 1785, his executors sold the premises at auction, which were purchased by *Joshua Carman*, who went into possession, claiming the property as his own, and continued to reside there until 1794, when a hurricane blew down the house; that *Carman* said he owed the *Ludlows* a large sum of money, and that they released the debt, in consideration of his giving up the possession to them; that *Lawrence Van Kleeck* was the possessor and reputed owner at least 46 years before the trial, and when he died, in 1771, his son *Baltus* succeeded to the possession, and built a house, in which his son *Lawrence* resided until his death, in 1776; that *Baltus* was within the enemy's lines during the *American* war; that *M'Dougle* was in possession in 1777, and said that he was put into possession by the commissioners of sequestration; that one *Wood* succeeded *M'Dougle*, and *Chamberlain* succeeded *Wood*; that *Chamberlain*, while in possession, said that he paid rent to *John Van Kleeck*, one of the executors of *Baltus Van Kleeck*. *John Van Kleeck* was also an executor of *Leonard Van Kleeck*.

The plaintiff then proved, that in *September*, 1794, a complaint was made in behalf of *Jane Van Kleeck* and *George Ludlow*, against *Joshua Carman*, under the statute against forcible entries and detainers; that he was indicted, and traversed the indictment; but before the trial, a settlement took place, and the plea was withdrawn, and the indictment confessed; that on the 12th of *March*, 1799, *Baltus Van Kleeck*, the original owner of the premises, wrote a letter to *Joshua Carman*, his son-in-law, stating that his house was sold at *Poughkeepsie*, to *George Ludlow*, for his father and his brother *Gabriel*, for 1,700*l.* and that he

must let Mr. *Ludlow* go in as soon as he could; that on the 12th of *March*, 1799, *Baltus Van Kleeck*, and *George Ludlow* entered into articles of agreement under their hands and seals, in which *Baltus*, for the consideration therein after mentioned, *granted, bargained, sold and conveyed* the premises *to George Ludlow*, to *hold in trust for William and Gabriel Ludlow, their heirs and assigns forever ;* and *Baltus* covenanted to make a good and sufficient deed by the first day of *May* following ; in consideration whereof, *George Ludlow* covenanted, that he and *William Ludlow*, or one of them, would assign bonds given by persons in the county of *Dutchess* and *Albany*, (including *Baltus Van Kleeck's* bond to *William Ludlow*,) to the amount of 1,700*l.* and the parties mutually agreed to secure the said lands and bonds, *to be severally conveyed and assigned*, against all confiscations, &c. *Baltus Van Kleeck* agreed also, that the bonds to be taken by him in part payment, were, a bond from *Baltus Van Kleeck* to *William Ludlow*, a bond from *C. Seabury* to *George Ludlow*, a bond from *E. Bogardus* to *George* and *William Ludlow ;* and that if the two last bonds proved bad, or the whole should fall short of the consideration-money, the same should be made good, by assigning other bonds, &c. For the true performance of the grants and covenants, each party bound himself to the other in the penal sum of 500*l.*

The plaintiff also produced in evidence the will of *George Ludlow*, dated the 17th of *May*, 1797, by which he devised all his estate in fee to his brother *William W.* one of the lessors ; and also the will of *William Ludlow*, dated the 19th of *April*, 1783, by which he empowered his executors to sell all his estate in fee ; a conveyance from the executors of *William Ludlow* to *Charles Ludlow*, one of the lessors, dated the 6th of *July*, 1795, for the consideration of 563*l.* 2*s.* for parts of the lots ; a conveyance from *Charles Ludlow* to *Gabriel W. Ludlow, Carey Ludlow*, and *William W. Ludlow*, dated the 6th of *October*, 1797.

ALBANY,
August, 1808.

Jackson
v.
Myers.

The jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial.

*J. Tallmadge* and *Emott*, for the defendant. From the different persons put into possession of the premises, by the commissioners of sequestration, it is manifest, that the title of *Van Kleeck* was recognised by them, and rent was paid to his executors.

The defendant being in possession, was not bound to prove a title, but he has shown an outstanding title ; that *Laurence Van Kleeck* died seised, and left the premises to his son *Baltus*. The plaintiff, having failed to make out a possessory title, has attempted to show a paper title ; but the instrument executed in 1779, between *Baltus Van Kleeck* and *George Ludlow*, and set up by the lessors, was a mere agreement or covenant to convey, and not an actual conveyance. In construing deeds or instruments, the intent of the parties is more to be regarded than the words.* Thus, where the most proper and authentic words to describe a present lease for years, are made use of, yet if, upon the whole deed, there appears no such intent, but that the writing was merely preparatory and relative to a future lease to be made, the law will disregard the words, and construe the instrument according to the manifest intent of the parties. But should this be regarded as a deed or personal conveyance, what would be its operation ? If it has any operation at all, it can only be as a bargain and sale at common law. Since the statute of uses, the bargain is said to vest the use, and the statute the possession. But the *use* must vest in the bargainee before the statute can vest the possession.† To raise a use, there must be a valuable consideration in money. Nor can a use be executed upon a use.‡ The statute cannot have a double operation. On a bargain and sale, no use can be declared but what the law creates ;§ and the use vests only in the person who gives the consideration ;¶ and the bargainee is seised only to his own use, and not to the use of another. Again, a

* 4 *Bac. Ab.*
160—164.
*Leases*, (K.)
*Noy*, 128.   1
*Term Rep.* 735.
2 *Term Rep.*
739.   1 *Bro.*
*Ch. Rep.* 397.
5 *Term*, 163.
*Shep. Touch.* 84.
3 *Atk.* 136.   1
*Lev.* 55.   1 *Sid.*
82.   1 *Keble*,
160. 225. 274.
*Shep. Touch.*
514.   *Plowd.*
160 b.   6 *East*,
530.
† 2 *Wooddeson*,
246.   *Cro. Jac.*
696.
‡ *Sanders*, 316.
1 *Leo.* 148.   2
*Black. Com.*
335.   *Gilb.* 194.
§ 1 *Co.* 176, 177.
*Bac. Ab.* 57.
*Uses*, (E.)
¶ *Saund.* 313—
315.   *Shep.*
*Touch.* 509, 510.
*Littleton*, sec.
60.   *Co. Litt.*
49 a.

bargain and sale to a person generally, creates only an estate for life ; for since the statute has transferred the possession to the use, uses are governed by the rules of common law, and no fee-simple can be created, without the word heirs.*

But admitting that there are words which, if taken by themselves, would amount to a bargain and sale, yet if the whole instrument is taken together, and the intention is regarded, it is clear that this is a mere agreement for a conveyance. In 1779, the uniform mode of conveying a fee was by lease and release. The words, " articles of agreement," clearly show that no present conveyance was intended.

*Harison* and *J. Radcliff*, contra. The words of the deed clearly import a conveyance in *presenti*, and a covenant for further assurance, which is usually inserted in deeds. The consideration was sufficient. The bonds and mortgages may be regarded as money ; they were in the power of the *Ludlows*, and it is not essential that the consideration should move from the person to whom the sale is made. A covenant to pay the consideration-money at a future day, is sufficient.† It is rue, that the legal use can arise only to the bargainee ; but there is a limitation to the use of the bargainee, for the words " their respective heirs," may apply as well to the bargainee as to the *cestui que trusts*.

At least, here is an agreement to convey the land to the lessors of the plaintiff, which, it is admitted, gave them an equitable title, under which possession was taken, and has been kept up for near 30 years. After a lapse of 30 years, a conveyance may be presumed to have been made pursuant to that agreement. As against trespassers and intruders, every presumption ought to be made in favour of the lessors.

Again, as the lessors entered under *Van Kleeck*, the real owner, their possession ought to be coupled with the title of *Van Kleeck*, and be protected by it against mere wrongdoers. It is not necessary for the plaintiff to show

ALBANY,
August, 1808.

Jackson
v.
Myers.

* 1 *Co.* 100. 1
*And.* 35.    3
*Keble*, 317.  8
*Co. Rep.* 94 *a.*
1 *Co.* 87.    *T.*
*Raym.* 287.
*Sanders*, 115.
*Vaugh.* 49.

† *Dyer*, 337 *a.*

an uninterrupted actual possession of the land. It is enough that the lessors have exercised acts of ownership, and have invariably claimed and asserted their right. There has been, in fact, a possession in the lessors, and by those under whom they claim, from 1779, until about two years before the trial of the cause. *Carman* was the only person, except the *Ludlows*, who claimed to hold under *Van Kleeck*, and he relinquished to them all his claim, so that they became entitled to the whole right of possession which belonged to *Baltus Van Kleeck*. In the case of *Jackson*, ex dem. *Murray & Bowen*, v. *Hazen*,* it was decided, that a peaceable possession for three years was sufficient to enable the plaintiff to recover in ejectment, against one who entered without any colour of right. A mere trespasser or intruder ought not to compel a person who claims title to prove a regular title. A possession is enough, *prima facie*, to entitle the plaintiff to recover in ejectment.† A priority of possession in the plaintiff will prevail against a defendant who shows no title.

* 2 *Johns.* 22.

† 2 *Lil. Ab.* 128. 2 *Saund.* 112.

Kent, Ch. J. delivered the opinion of the court. The lessors of the plaintiff must recover in this case, either on the strength of the deed of the 12th of *March*, 1779, or of their possession of the premises prior to the entry of the defendant. They have shown no title but what is to be deduced from one or other of these sources.

1. The deed produced does not appear to be sufficient to give them the title in question. Considering it in all its parts, it is to be taken as a mere article of agreement, and not a conveyance of an estate. It purports, by its formal commencement, to be only articles of agreement, and it concludes by binding the parties to each other, in a penalty for the performance of the grants and covenants in the deed. It is well understood, that as early as the year 1779, the form of conveyance in this state was. by lease and release, and that this had been the universal practice during the colonial government, a practice which continued until the abolition of the *British* statutes, in

ALBANY,
August, 1808.

Jackson
v.
Myers.

the year 1788. It was the generally received opinion at that day, that a bargain and sale required enrolment, and this usage and opinion (whether correct or not is perfectly immaterial) is a strong *indicium* of the understanding of the parties to this deed, that no estate was intended to be conveyed. There was no consideration paid or acknowledged, but only an agreement that bonds should thereafter be assigned, and there was a mutual covenant to secure the lands and bonds " *to be conveyed and assigned*," from forfeiture and confiscation. After this, who can doubt of the intent? The intent, when apparent and not repugnant to any rule of law, will controul technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavour to give every part of it meaning and effect. The rule as to leases, according to Lord Chief Baron *Gilbert*, (*Bacon*, tit. *Leases*, &c.) is, that though the most proper form of words be used to describe and pass a present lease for years, yet, if upon the whole deed there appears no such intent, and that it is only preparatory and relative to a future lease to be made, the law will rather do violence to the words, than break through the manifest intent. The case of *Sturgion* v. *Dorothy*, (*Noy*, 128.) is directly to this point. There was in that case an article of agreement to lease a place for 50 years, and the words were in the present tense, and with the form of an immediate demise, but as the intent from another part of the same paper appeared to be, that the agreement should only be executory, the court ruled that it was not a lease, but only an agreement for a lease. The like decision was made in the modern cases of *Goodtitle* v. *Way*, and of *Doe* v. *Clare;* (1 *Term*, 735. 2 *Term*, 739.) and in one of those cases, the decision in *Noy* was recognised as law. The same rule of construction has been applied to cases where a *life* estate was in question. It was determined in *Doe* v. *Smith*, (6 *East*, 530.) that where the

whole instrument imported that something ulterior to the agreement was to be done by way of a regular lease, it showed the intent to be, notwithstanding the words of the demise appeared to be *in presenti*, that the writing was only to operate as an agreement for a lease, and not as the lease itself. But the case of *Foster* v. *Foster*, (1 *Lev.* 55. 1 *Sid.* 82.) is much more analogous than any which has been mentioned. The deed in that case respected an estate in fee, and began with the like form of commencement, as the deed in the present case, and used the like words denoting an immediate conveyance, but the court held, that the articles did not raise any use, but rested only in covenant ; that it was only an agreement preparatory to a further assurance, and that no fee passed.

These cases sufficiently establish the rule of construction, that though a deed may in one part use the formal and apt words of conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail.

If, however, we were to give this article of agreement the force and effect of a technical bargain and sale, it is evident that only a life estate was conveyed to *George Ludlow* ; and that the *cestui que trusts*, if they had any remedy, after the death of *Ludlow*, to enforce the trust, were under the necessity of resorting to a court of equity to obtain it. The legal estate reverted back to the heirs of *Baltus Van Kleeck.* The reversion in fee was clearly in the bargainor, for want of words of inheritance. Whenever the use limited by a deed expires or cannot vest, it returns back to him who raised it, and a use upon a bargain and sale cannot be limited to any other person than the bargainee. He cannot be seised of the land to any other use than his own. The trust created in this case was exclusively within the cognisance of the court of chancery. It is, therefore, a most obvious conclusion, that the paper title set up by the lessors must fall to the ground.

2. The next point in the case is, whether the lessors made out a title by possession.

It appears that *Baltus Van Kleeck* was the original owner of the premises. He acquired a title by a descent cast from his father, *Lawrence*, and he was in the peaceable possession at the commencement of the *American* war. The legal title must still reside in his heirs, except so far as it may be deemed to be lost or weakened by the possession of the *Ludlow* family. After a careful examination of the facts, I cannot perceive that the lessors of the plaintiff have made out a right of possession. *William Ludlow* entered in the year 1776, as a tenant under *Baltus Van Kleeck*, and he remained there for a year, and then left the premises. *M'Dougle* succeeded him, and said that he was put in possession by the commissioners of sequestration. Here was still a possession continued under the title of *Van Kleeck*, by public officers, assuming the possession as belonging to *Van Kleeck*, who had withdrawn within the *British* lines. *M'Dougle* was succeeded by *Lewis* or *Wood*, and he by *Chamberlain*, who was in possession in 1784 and 1785, and paid rent to one of the executors of *Baltus Van Kleeck*. In 1785, the executors of *Baltus* sold the premises at auction, and *Carman* purchased and took possession under that title, and held the premises until the year 1794, when we first hear of any recognition of a title in the *Ludlow* family, and it is from that time only that any title by possession can be deduced. The fact mentioned by one of the witnesses for the plaintiffs, that *Lewis*, who was in possession after *M'Dougle*, said that he held under the *Ludlows*, cannot have much weight. It is probable there must have been some mistake on this point, as the possession and title of *Van Kleeck* seem afterwards to have been regularly continued down and acknowledged until the controversy which took place with *Carman*, in 1794. The possession of the *Ludlows* since the year 1794 was equivocal, and not sufficient to support any

.title founded upon possession alone. About the time that *Carman* acknowledged their title ; he quitted the posses- sion, and from that time until the entry of the defendant, the premises were left vacant and uninclosed. The pay- ment of taxes, and the partitions made by the *Ludlow* family, were not evidence of actual possession, though they may have been of a claim of title. The lessors of the plaintiff, therefore, failed to support a right founded on possession, and the defendant showed an outstanding title in the legal representatives of *Baltus Van Kleeck.*

The court are, accordingly, of opinion, that the verdict was against evidence, and ought to be set aside.

VAN NESS, J. having been formerly concerned as coun- sel, gave no opinion.

THOMPSON, J. not having heard the argument, gave no opinion.

Rule granted.(*a*)

---

(*a*) A new trial was also granted in the case of *Jackson*, ex dem. *Ludlow* and others, v. *French*, depending on the same questions.