WILLIS (BANK OF CUMBERLAND v.). See Case No. 885.

## Case No. 17,769.

### WILLIS v. BUCHER et al.

[3 Wash. C. C. 369.] [1]

Circuit Court, D. Pennsylvania. April Term, 1818.

CONSTRUCTION OF WILL—ESTATE TAIL — PATENT FOR LAND—EVIDENCE OF ISSUE—EXECUTED CONVEYANCE.

1. A devise to A, and if he die without heir or issue, the estate to go to B, his brother, gives an estate tail to A, by implication.

2. Certain expressions in a will, showing an intention to dispose of his whole estate, may often enlarge an estate, which would otherwise be for life only, into a fee; as a devise to A, "freely to be possessed and enjoyed;" for here the implied intention is not inconsistent with the declared intention. But if real estate be given to A, expressly for life; or in tail, either expressly, or by a clear implication; there are no instances where such estates have been converted into a fee simple, by words of doubtful import, used in either.

3. The law never unnecessarily creates an executory devise;. unless where the testator's intention would otherwise be defeated.

4. The entry in the books of the land office, that the balance of the purchase money was paid by the person "to whom the patent had issued," is evidence that a patent did issue; although the patent is not produced.

5. A deed to A, in consideration of a sum of money paid, or secured to be paid, in the usual form of a deed of bargain and sale, is to be considered as a conveyance executed; notwithstanding a covenant by the grantor, "to make a patent." which can only mean, to obtain one, and deliver it to the grantee.

6. The provisions of the insolvent laws of Pennsylvania, passed in 1799, do not extend to estates tail. so as to make a conveyance, executed according to that law, operate as a bar to an estate tail.

This was an ejectment for an undivided moiety of a tract of land, in York county, Pennsylvania. The title of the plaintiff was derived under a license dated in 1734, to David Priest, under which the land was surveyed, in 1737; and in the year 1746, William Priest, son of David Priest, had credit in

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the books of the land office, for the whole of the purchase money paid, with the following memorandum annexed, "to whom the land is patented in full." On the 4th of August, 1747, William and Susannah Priest, conveyed this land, 200 acres, to Henry Willis; who, on the 13th of August, 1764, duly made his last will, and disposed of the land between his two sons, William and Henry, in the following words, to wit:—"As touching such worldly estate, wherewith it has pleased God to bless me, I give, demise, and dispose of the same, in the following manner and form," &c. After providing for his wife, the will proceeds;—"also, I give to my son William Willis, whom I constitute my sole executor, seventy acres of land, (by certain bounds,) to be taken off the plantation I now live on," &c.; "also ten acres of meadow ground," (particularly described:) "if the said William Willis should chance to die without hair or ishue, the above said land must fall into the possession of his brother, Richard Willis." He then gives to his son William, a moiety of his horses and cattle, and adds a bequest to his daughter Mary, of £40, to be paid by his son William; and of the like sum to his daughter, to be paid by his son Richard; the will then proceeds to dispose of the whole of the remainder of his plantation, to his son Richard;—"and if the said Richard should chance to die without hair or ishue, the above said lands and effects shall fall into the possession of my son William, by them freely to be possessed and enjoyed." In November, 1783, William Willis took out a patent for the eighty acres so devised to him, which recites that a patent had been issued for this land, which was lost or mislaid; nor did it appear, whether it had passed the seal or not. In 1794, William Willis conveyed a part of the land to Mr. M'Kenny and his heirs, under whom some of the defendants claim title; and on the 2d of April, 1796, he conveyed the residue of the tract to others, in fee, under whom the other defendants claim. On the 20th of November, 1800, William Willis died, leaving one child, Henry, who arrived at the age of twenty-one, on the 24th of April, 1799. Henry became insolvent, and took the benefit of the insolvent law of Pennsylvania, on the 20th of September, 1799. He made a general assignment to his trustees of all his estate, real and personal; and on the 8th of April, 1805, the surviving trustee conveyed all the right of Henry Willis, in and to the land which William Willis had conveyed on the 2d of April, 1796, to Jacob Wayne. Henry Willis died in the year 1806, leaving issue the lessor of the plaintiff, and one other daughter.

Binney & Tilghman, for lessee of plaintiff, contended, that William Willis took, under his father's will, only an estate in fee tail, by implication, with a remainder to his brother Richard, notwithstanding the introductory words in the will, the charge on William, of the £40 to his sister, or any other expressions in any other parts of the will. They cited T. Raym. 426, 452; Willis, 369; Cro. Jac. 695; Ld. Raym. 568; 3 Wils. 244; Cowp. 234, 410; 8 Mass. 3; 11 Sandf. 388, to prove, that the words of a will are never construed to pass an estate, by way of executory devise, if the limitation can take effect as a contingent remainder. To show that tenant in tail, cannot, by agreement, bar the issue, Plow, Cont. 125. In answer to a point stated by the defendants in their opening, that Henry Willis permitted the defendants to make expensive improvements on the land, without discovering his title, which bound him and his issue, they cited 2 Ch. Cas. 108. To prove that a warrant, survey, and purchase money paid, constitute a legal right of entry, 2 Binney, 465.

Hopkins & Ewing, for defendants, contended: 1. That William Willis took a fee simple, by force of the introductory words of the will; the charge on the devise of £40 to his sister, and the expression "freely to enjoy and possess," which ought to be applied to the devise to William, with an executory devise to Richard, by force of the words "must fall into the possession of Richard;" which are equivalent to a limitation over, upon the happening of the contingency in the lifetime of Richard. They cited 7 Durn. & E. [7 Term R.] 589; 3 Durn. & E. [3 Term R.] 143, 256; 8 Durn. & E. [8 Term R.] 1; 2 Mass. 56, 562; 2 Fearne, Rem. 245; 3 Burrows, 1618; 6 Johns. 190; Cowp. 352; 1 Johns. 443; 3 Johns. 394. 2. That the lessor of the plaintiff has only an equitable estate for want of a patent; and that the estate in William Willis, under his father's will, was only an equitable estate, for want of a patent; and that the estate in William Willis, under his father's will, was only an equitable estate; and therefore, might be barred by a common deed of conveyance. See 7 Bac. Abr. 185; Amb. 510; cases cited, 2 Ch. Cas. 63; 1 Vern. 440; 2 Vern. 344, 131, 225; 1 Fonbl. 293. This was contended to be an equitable estate, in Henry Willis, the testator, and his issue; not only for want of a patent, but because the deed from William and Susannah Priest to Henry Willis, of the 4th of August, 1747, amounted to no more than articles of agreement, notwithstanding it contains words of grant. They referred to 3 Johns. 388; 1 Yeates, 393, 327. As to the nature of an estate where no patent has issued, 4 Binney, 145.

The defendants' counsel were about to offer evidence, in the opening, to prove, that Henry Willis was guilty of a fraud, in not disclosing his title to the purchasers of his father, at the time they did purchase, and in looking on, while the defendants were putting valuable improvements on the premises, without making any objection; which fraud, they contended, was sufficient to bar him and his issue. But the court stopped the counsel.

stating, that if their conclusion was even well founded, yet, such questions were not to be examined on the law side of the court.

WASHINGTON, Circuit Justice (charging jury). The first question is an unmixed one of law. What estate did William Willis take, under his father's will? The rule to which the counsel on both sides have appealed, and which is a landmark never to be lost sight of, is, that in the construction of wills, the intention of the testator is to be sought for and carried into execution, if it can be done without a violation of some established principle of policy or law. Thus, a devise to A and his heirs, gives a fee simple estate; but if the testator add, that upon the death of A, without issue, the estate shall go over to B, A takes an estate tail; because the limitation shows, that by the word heirs the testator meant heirs of the body, and not heirs general. In this case, the devise is to William Willis generally; and if he die without heir or issue, the estate to go over to Henry. As to the testator's intention, so far as it is to be discovered from this clause of the will, there can be no doubt; as the limitation over to Henry was not to take effect, so long as William had issue, he clearly intended that such issue should take the estate in the mean time. But this they could not do as purchasers, because there is nothing given expressly to them; and therefore, in a deed, William Willis could only have taken an estate for life. But in a will where the intention of the testator is to govern, the court will so construe the devise, as to vest an estate tail by implication, in William Willis, so that his issue may be enabled to take by descent. This, as a general principle, is not understood to be denied by the defendants' counsel; but the argument is, that there are expressions in other parts of the will, which show that the testator intended to give a fee simple estate to William, with a remainder over to Henry; which may well be supported as an executory devise, inasmuch as the expressions used in the limitation to Henry show, that the contingency was to happen in his lifetime, else the estate could not fall into his possession.

The parts of the will, principally relied upon to show an intention to give a fee to William Willis, are the introductory clause, expressive of his intention to dispose of all his estate; the charge upon William, of the legacy of £40 to his sister; and the words "freely to be possessed and enjoyed," subjoined to the limitation to William, upon the death of Henry without issue. There is no doubt, but a declaration of the testator's intention to dispose of all his estate, or the charge of a gross sum upon the estate devised, or annexed to the devise as a condition, have frequently been held to convert an estate into a fee, which, for want of words of inheritance being added, the court would have considered as nothing more than an estate for life. So a devise of an estate to A, "freely to be possessed and en-

joyed," will be construed to pass a fee simple. It is remarkable, that in all these cases, the implied intention of the testator, collected from this and similar expressions, is perfectly consistent with his declared intention. But if the estate be given to A for life, expressly; or to A in tail, either expressly or by clear implication; there is no instance where such estates have been converted into a fee simple, by words of doubtful import, like those noticed before, in other parts of the will.

Such a construction in this case, would defeat the obvious intention of the testator in two particulars: (1) By giving the estate to William and his heirs general, where the intention was to confine it to the heirs of his body;—and (2) to annex a condition to the limitation over to Henry, and thus to leave the estate to descend to the heirs of the testator, in case William should die without issue, after the death of Henry; when it is plain, that the testator intended the estate for Henry, in exclusion of the daughter, whenever the estate of William should be spent, by a failure of issue. Another objection to the construction is, that it unnecessarily creates an executory devise, which will never be done, except in a case where the intention of the testator cannot otherwise be carried into effect. If the limitation to Henry Willis, must depend upon the contingency of a failure of issue, during his life, as is strongly contended for by the defendants' counsel; there is still no necessity for construing the devise to William, to be an estate in fee simple; since William might, in that case, take an estate tail, with a contingent remainder to Henry, upon the event of William's dying without issue, during the life of Henry. But there is no necessity even for this construction. It was obviously the intention of the testator, to give to William an estate in tail, with a remainder to Henry, in fee; which intention, as to the quality of the estate given to the remainderman, may fairly be collected from the introductory words, relied upon by the defendants' counsel, for increasing the estate to William, as well as from the words, "by them freely to be possessed and enjoyed," in the devise to Henry, showing very clearly that the testator intended to divide this tract of land between his sons and their issue, respectively, with cross remainders in fee.

The argument of the defendants' counsel is, that William took an estate in fee simple, with a remainder over to Henry, by way of executory devise. If so, it may fairly be asked, what was the contingency, upon which the estate was to go over to Henry? If it be said, upon his dying without issue, then the answer is, that this is no contingency at all; because, the word "issue," explaining what heirs were meant by the testator, William took an estate tail, in like manner as if the devise had been to him and the heirs of his body. If the word "heir" be relied upon, then the argument admits of the same answer; because William could not die with-

out heirs general, during the life of his brother; and therefore, the word heir or heirs, would be construed to mean issue. There is therefore no contingency upon which an executory devise can be raised.

2. The next objection is, that no patent from the state of Pennsylvania, to William Priest or to Henry Willis, has been given in evidence, and that therefore the lessee of the plaintiff cannot maintain this ejectment. There are two answers to this objection. The first is, that the entry on the books of the land office, that the balance of the purchase money had been paid by William Priest, to whom a patent had issued, ought to be considered as evidence that a patent did issue, although it is not produced; and secondly, that a warrant and survey, and purchase money paid, gives a legal right of entry in Pennsylvania. This was decided in the case of Simms v. Irwin [3 Dall. (3 U. S.) 425]; and this decision has been always regarded and acted upon in this court.

3. The next objection is, that the deed of the 4th of August, 1747, was merely executory, and ought not to be considered as a grant of the estate to Henry Willis. This deed has all the requisites and the form of an absolute conveyance, by way of bargain and sale in presenti. It is stated to be made in consideration of a certain sum of money, the whole of which is either paid or secured. The covenant to make a patent, which constitutes the greatest difficulty in the case, may fairly be construed to mean, that the grantor should procure a patent, to be made out and delivered to the grantee. Taken literally, the covenant has no legal meaning, as the grantor could not himself make or grant a patent. But as the meaning of this word is perhaps as well understood by landholders as any other that can be used; it can scarcely be supposed, that the parties had in their minds any other conveyance than one which amounted technically to a grant from the state. This case differs materially from that of Jackson v. Myers, 3 Johns. 388. The covenants are different. In that, the consideration was not only not paid or secured, but the grantee covenanted, in consideration that the grantor should make him a good and sufficient deed, by a certain day, to assign to him certain bonds. In short, all was executory; besides which, deeds of bargain and sale were not used, at that time, in New-York. to pass lands, as the general opinion was, that they required enrolment; and this circumstance was considered, by the court, as a strong evidence of the understanding of the parties to that deed. This reason does not operate in this case. We are, therefore, of opinion, that this deed operated as a conveyance of the land to Henry Willis. But, if the court had any doubt as to the law of this point, we think the jury, after about 70 years of uninterrupted possession, under that deed, ought to presume a conveyance.

4. As to the effect of the insolvent law of Pennsylvania, of 1799, we are of opinion, that it will not bear the construction put upon it by the defendants' counsel, which would render the land in question liable to Henry Willis's debts. The assignment, therefore, by Henry Willis, under this law, did not bar his issue.

We are, upon the whole, of opinion, that the law is in favour of the lessor of the plaintiff, and that such should be your verdict.

Verdict for defendants.

THE COURT, on motion, granted a rule, to show cause, why the verdict should not be set aside, and a new trial allowed.

Ewing, for defendants, opposed a new trial: 1. Because there had been three verdicts for the defendants, for the land in question; and the justice of this case is in favour of the defendants. The title of the plaintiff was supported by strict principles of law, and they will not be enforced by courts, on a motion for a new trial in an ejectment. It has only been of late, that courts grant new trials in ejectment, when the verdict is for the defendant; as the plaintiff may resort to a new action. Cases cited, Salk. 646; 1 Bos. & P. 338; 6 Bac. Abr. 662; 1 East. 583; 2 Binney, 129; 4 Term. R. 468; 1 Burrows, 11, 54; 2 Burrows, 664, 673, 674; 3 Burrows. 1306; 2 Term. R. 4; 1 Mass. 237; Cowp. 601; 2 Binney, 333; 3 Binney, 317. 2. That if the court grant a new trial, they will impose terms on the plaintiff, and oblige him to pay the costs of all the former ejectments, none of which have been paid. Bull. N. P. 111; Hurst v. Jones [Case No. 6,933]. 3. That Hannah Willis, the plaintiff, is an infant, and was born in the state of Pennsylvania, and was, for the purpose of having this suit instituted, removed into the state of Maryland. As a minor she could not change her domicile, so as to give the court jurisdiction; and that having, since the suit was instituted, returned to the state of Pennsylvania, the court will not aid the imposition which has been practised, by ordering a new trial. Maxfield v. Levy [Id. 9,321]; [Bingham v. Cabot] 3 Dall. [3 U. S.] 384; [Milligan v. Milledge] 3 Cranch [7 U. S.] 220; [Logan v. Patrick] 5 Cranch [9 U. S.] 288.

An affidavit, taken ex parte, was read; stating the facts of the birth of the plaintiff in Pennsylvania; her infancy and removal to Maryland, and subsequent return. and present residence in this state.

Binney & Tilghman, contra, contended, that the verdict was against both law and justice. and the whole community are interested in the preservation of the rights of courts to decide the law in civil cases. In the supreme court of the state of Pennsylvania, a new trial had been granted in an ejectment for this land; and the court said, they would grant new trials. where the verdict of the jury was against law. The case was, on both sides, considered as a question of law; the jury paid no attention to the argument; and

some of them went out of the court-room while it was going on. 1. That this is the first suit instituted by the present plaintiff; and this case differs from that brought in the court of Pennsylvania, in which an allegation of fraud was a part of the defence. The plaintiff claims under the will of her grandfather, and not under her father, to whom fraud was imputed. 2. The court will not impose the costs of suits, to which the plaintiff was not a party, and which were decided in another court. 3. As to the citizenship of the plaintiff, it was not objected to at the trial, and cannot now be brought into question, on an ex parte affidavit. There is nothing illegal in removing to another state, to give jurisdiction to this court; and a return to the state, after suit brought, does not change or affect the rights of the plaintiff. The only course the defendants' counsel could adopt, in reference to the jurisdiction of the court, would be, to move to dismiss the suit; and the affidavit could not be read to support the motion, although it might be the foundation of a rule to show cause.

WASHINGTON, Circuit Justice. When the motion in this case was made, it was considered that a new trial was a matter of course, as the verdict of the jury was in direct opposition to the express charge of the court, upon a plain matter of law. It gives us great satisfaction, that, during the sixteen or seventeen years, in which we have presided in this court, this is the second case, where, upon a dry point of law, a jury has given a verdict against the opinion of the court. It is not on the ground of dissatisfaction at the conduct of the jury, who are respectable men, and no doubt thought they were doing right, that the court will set this verdict aside. It is important that the law should be adhered to, and that the rights of courts should be preserved. We should sit here for a very poor purpose indeed, and should disregard our duty and our oath, if we should submit to verdicts against law. The safety, and happiness, and prosperity of every one, are deeply interested, that if a jury undertake to decide, and does decide against the law of the land, their verdict should be corrected; for if they err, and the court has no control over their decision, where is the remedy for any injury or wrong an individual may sustain by their verdict? But if we make a mistake, the court above will correct our errors.

We never interfere with the facts of a case, and always leave them to the jury, as proper for their examination and decision; stating such of them only as are necessary to apply the law, and expressing our opinion upon the law, so that either party may take an exception to it, and have the benefit of such exception. As to ejectments, there may be cases, where courts, after two or three verdicts, will not interfere, and where the justice of the case is clearly with the verdict. But in this case, every thing is in favour of the plaintiff,—both the law and justice are with her. The only thing claimed by the defendants, was founded on facts, which the court would not allow to be given in evidence on a trial at law; as the relief of the party upon them should be asked on the equity side of the court. The plaintiff here claims under the bounty of her grandfather, and not under her father, to whom these facts relate. The court, as at present advised, will not hesitate to set aside a verdict in ejectment, when against law.

With respect to the affidavit, it is not evidence for any purposes, either to continue the motion, or in reference to a new trial. If the case goes off to another court, the party will have all the advantage of the facts relative to the jurisdiction. The court would give the defendants leave to enter a special plea to the jurisdiction; or, upon notice, they might have the benefit of all the facts upon the trial; or a motion may be made to dismiss the suit, and they may bring forward proper evidence.