Daly, F. J.
It is to be taken for granted, that the deed, which has not been put upon record, but is in the defendant’s possession, has the covenant which, by the contract of sale, was to be contained in it.
The structure which the defendant was about to erect, a wooden fence, twenty feet high, extending from the defendant’s south wall to the rear of his lot, is, in my judgment, “ a building” within the meaning of the covenant. In construing a word like this, in an instrument, we are not confined to its strict and literal meaning, but it is to be taken in the sense which the parties intended, and what they intended is to be gathered from the whole instrument and the subject matter (Jackson v. Myers, 3 Johns., 395; Platt on Covenants, 136).
“ The law,” says Bacou, “ will rather do violence to the words, than break through the intent of the parties ” (Bao. Abr. Leases, K). Following this rule of construction, there is no difficulty in ascertaining what the parties meant by the restriction “ against erecting any building within fifteen feet of the rear line ” of the lot sold to the defendant.
When the contract for the sale of this lot was made, there was upon the rear of the adjoining lot, which. belonged to the plaintiff, a building .which was used in connection with a house *313 in 38th street, belonging to the plaintiff’s husband. ' The lower story of this building was a laundry, and the upper one a green house, and the laundry was lighted by a window looking out upon the lot sold to the defendant. When the plaintiff in her contract of sale, therefore, provided that no building should be erected within fifteen feet of the rear line of the lot which she sold to the defendant, the manifest intention was that the space should be left open, to afford light and air upon that side to the building on the rear of her adjoining lot.
This is obvious, not only from the situation of the premises, but from what was done immediately afterwards. The contract was entered into in the month of April, 1865, and in the sum mer following, about or very soon after, the time, when the defendant began to excavate for the building which he has erected upon his lot, the building on the rear of the plaintiff’s lot was changed into a dwelling house, by extending the front of it ten feet towards Madison avenue, by adding another story, and by closing the openings which had previously connected it with the house in 38th street; a change which was probably contemplated when she sold the adjoining lot to the defendant. She purchased both lots in the year 1856, and her husband purchased two lots on 38th street, the rear of which adjoined the rear of the plaintiff’s, as indicated in this diagram.

In 1859, the plaintiff’s husband erected two costly dwelling houses upon his lots in 38th street, occupying one of them, Mo. 15, as his residence; having in connection with it, the green *314 house and laundry before referred to, on the rear of his wife’s lot, ¡No. 226 Madison avenue. In the summer of 1 65, he changed the green house and laundry into a dwelling, which was done before the defendant had put up the walls of his building, and this alteration having been completed in September, the plaintiff’s husband took possession tif the premises as his dwelling house, where he still remains, and in the fall of the year, he sold his house and lot on 38th street. In making the alteration, the walls were left as they had stood, so that the wall of the original building, now forms the dividing line of the front and rear rooms of the house as it has been altered, which is a building twenty-four by thirty feet, having windows looking out upon the open space upon the rear of the defendant’s lot. It extends thirty feet from the rear of the lot, and the space in front of it, towards Madison avenue, is an open yard. By the terms of sale, the deed of the defendant’s lot was to be delivered to him on the 29th of May, and he probably received it about the time, for in the August following he began to erect his building, which he set fifteen feet forward fronq the rear line of his lot, extending it eighty feet towards Madison avenue.
The situation of the premises, as I have said, when the contract for the sale of the defendant’s lot was entered into, and the acts of the parties immediately thereafter, indicate very plainly what was their mutual understanding as to the nature of the restriction which the plaintiff imposed, when she contracted to sell the lot; and if the defendant were allowed to do what he has been enjoined by the court from doing, it would practically deprive the plaintiff of the benefit which she intended to secure by this covenant in her deed.
It appears by the affidavit which she has submitted, that the first story, which is now used for a kitchen, is lighted in the same way that it was before the alteration was made, and that there is no way of lighting it, except from the rear of the de fendant’s lot: so that this part of the dwelling would be as effect ually deprived of light, and I might almost say, of air, as if, in stead of the wooden fence, the defendant were to erect in the open space in the rear of his lot, what might be technically denominated ‘ a building ’ of a corresponding height with that of the proposed fence.
*315 It is very clear to my mind, that to allow him to put up this fence would be in direct contradiction of the intent of the parties as expressed in the instrument, and I am, therefore, of opinion that the injunction was properly granted.