MARIE S. LIVINGSTON, as Administratrix, etc., of ROBERT L. LIVINGSTON, Deceased, and Others, Appellants, *v.* HENRY GALBRAITH WARD and Another, as Trustees, etc., of ANNE D. THOMSON, Deceased, and Others, Respondents, Impleaded with BAYARD U. LIVINGSTON and Others, Appellants.

First Department, May 14, 1926.

Wills — construction — testator in contemplation of marriage executed deed of land to be held in trust for benefit of his intended wife and himself — said deed provided that on death of testator's wife trustee should reconvey premises to testator — testator died before his wife — residuary clause in will devising all residue to wife did not pass title to property held in trust — no title to such property was in testator at time of death — clause in trust deed directing trustee to reconvey to testator, " his heirs and assigns forever," simply required conveyance of fee to testator.

The residuary clause in the testator's will devising all residue of his property to his wife did not pass title to land which he conveyed to a trustee, prior to and in contemplation of his marriage for the benefit of his intended wife and himself, which deed contained a provision that on the death of the testator's wife the trustee should reconvey the property in question to the testator, since it appears that the testator died before his wife, and that by the terms of the trust the testator did not have at the time of his death any title to the land in question. Therefore the residuary clause of the will could not operate to pass title to said land.

The clause in the deed of trust directing the trustee to reconvey said land to the testator, " his heirs and assigns forever," simply required a reconveyance by the trustee of the fee of the land to the testator and did not authorize a substitution of transferees other than heirs; the clause in question is the technical clause used in the conveyance of property and merely meant that the fee of the land should be reconveyed to the testator.

MARTIN, J., dissents.

CROSS-APPEALS by the plaintiffs, Marie S. Livingston and others, and by the defendants Bayard U. Livingston and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of March, 1925, granting respondents' motions for judgment on the pleadings, dismissing the supplemental complaint and determining that title to No. 49 Broadway, Manhattan, New York city, vested in fee simple in certain devisees under the will of Anne D. Thomson, deceased, and also from a judgment entered in said clerk's office on the 13th day of May, 1925, pursuant to said order.

*Alfred R. Page,* for the plaintiffs.

*Joseph W. Welsh* of counsel [*Roland L. Redmond, Alfred C. Petté, Philip M. Brett* and *W. A. W. Stewart* with him on the brief;

*Carter, Ledyard & Milburn*, attorneys for Bayard U. Livingston and others; *Kellogg & Rose*, attorneys for Helen C. McCormick; *Stewart & Shearer*, attorneys for C. L. Livingston and others; *Frank B. Holsapple*, guardian *ad litem*, for the infants Holsapple], for certain defendants, appellants.

*John N. Drake*, guardian *ad litem*, for the appellant Brockholst Livingston.

*Edward S. Bentley* of counsel [*Louis O. Van Doren* and *William R. Conklin* with him on the brief; *Van Doren, Conklin & McNevin*, attorneys], for the appellant Baptist Home for the Aged.

*William A. Alcock* of counsel [*Williston Benedict* with him on the brief; *Frederic de Peyster Foster*, attorney for the Association for the Relief of Respectable Aged Indigent Females; *George N. Whittlesey*, attorney for The Children's Aid Society; *Osborn, Fleming & Whittlesey*, attorneys for American Female Guardian Society and Home for the Friendless; *Curtis, Mallet-Prevost & Colt*, attorneys for Society for Relief of Half Orphans and Destitute Children; *King, Lane & Trafford*, attorneys for The Society for Relief of Poor Widows with Small Children; *DeForest Brothers*, attorneys for The Presbyterian Home for Aged Women; *John C. Pemberton*, attorney for Inwood House], for appellant charities.

*Frederick Geller, Henry B. Closson* and *Langdon P. Marvin* of counsel [*Herman S. Hertwig* with them on the brief; *Everett, Clarke & Benedict*, attorneys for Henry Galbraith Ward and Charles M. Hough, trustees, and Charles M. Hough, as executor and trustee; *Parsons, Closson & McIlvaine*, attorneys for Mary L. Higgins and others; *Henry B. Closson*, guardian *ad litem*, for Jane Parsons; *Langdon P. Marvin*, guardian *ad litem*, for William L. Breese], for the respondents.

McAVOY, J. The judgment and order here for review declare that the defendants are vested with the title in fee simple to the property known as No. 49 Broadway, Manhattan, city of New York, which in May, 1885, one James Thomson, now deceased, conveyed by deed of trust to Edmund Randolph Robinson, as trustee, for purposes described in that conveyance.

We cannot agree that such a conclusion is warranted from a reading of the instruments upon which this order and judgment are based. All the scripts necessary for the determination of the devolution of title are annexed to the supplemental complaint, and all the facts upon which that complaint is founded are uncontested. The deed of trust set out the intended marriage of the

parties, Anne D. Parsons and James Thomson, and that in order to make provision for Anne D. Parsons, the grantor James Thomson had agreed to convey to Robinson, as trustee, certain premises therein described upon certain trusts, etc., and subject to certain powers, etc., all contained in the instrument. Under this agreement and in consideration of marriage, and ten dollars paid to Robinson, James Thomson, in the words of the deed of trust, the effect of which we are to determine:

" Granted, bargained, sold, aliened, remised, released, conveyed and confirmed and by these presents doth grant, bargain, sell, alien, remise, release, convey and confirm unto the said Edmund Randolph Robinson all that certain lot of land with the building and improvements thereon erected [here a description by metes and bounds] being known and distinguished by the street number 49 Broadway in said City. Together with all and singular the rights, members, tenements, privileges, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever as well in law as in equity of the said James Thomson of, in, to or out of or upon the said land and premises and every part and parcel thereof. To Have and to Hold the said land and premises to the said Edmund Randolph Robinson to the uses and purposes hereinafter declared, that is to say, from and after the solemnization of the intended marriage above mentioned to manage said premises and collect and receive the rents, income and profits arising therefrom and after paying all lawful and necessary expenses connected with the management of said premises to pay out of such net rents, income and profits to the said Anne D. Parsons the yearly sum of Three thousand dollars in two equal half yearly payments on the first day of June and December in each and every year during the term of her natural life, the first half yearly payment to be made on the first day of December next, such payments to be made to the said Anne D. Parsons or any agent whom she may authorize in writing under her hand and seal to receive the same in order that she may enjoy the same to her separate use, exempt from the control, debts and engagements of her said intended husband, * * * and the residue of the rents, income and profits to pay to the said James Thomson and his assigns during the term of his natural life and from and after the decease of the said James Thomson in the lifetime of the said Anne D. Parsons to pay the entire rents, income and profits of the said premises to the said Anne D. Parsons or her assigns during the term of her natural life, and from and after the decease of the said

Anne D. Parsons to convey said lands and premises to the said James Thomson his heirs and assigns forever."

Shortly after May 11, 1885, James Thomson and Anne D. Parsons were married, and Edmund Randolph Robinson accepted and entered upon the discharge of the trusts created by said deed of May 11, 1885. On July 24, 1896, Edmund Randolph Robinson died before said trust was fully determined and ended. James Thomson died on December 9, 1897, and thereafter and on or about January 19, 1898, Anne D. Thomson, Henry Galbraith Ward and Charles M. Hough executed a certain indenture, which indenture recited the deed of May 11, 1885, and the provision therein contained that in the event of Edmund Randolph Robinson dying before the trust thereby created should be fully determined and ended, it should be lawful for James Thomson and Anne D. Parsons, now Anne D. Thomson, by any writing under their hands, or after the decease of said James Thomson for the said Anne D. Parsons by any writing under her hand, to appoint some other person in place of Edmund Randolph Robinson, and that upon such appointment the lands and premises therein and thereinafter described should be conveyed so as to vest title to the same in the new trustee. The indenture also recites that James Thomson and Anne D. Parsons did shortly after May 11, 1885, unite in lawful matrimony, and the said Edmund Randolph Robinson did accept and enter upon the discharge of the trust created by the indenture of May 11, 1885, and thereafter on July 24, 1896, did depart this life before said trust was fully determined and ended, rendering necessary and proper the appointment of a new trustee or trustees to administer the trust; and the deed then declares that James Thomson departed this life on December 9, 1897. Further clauses recite that Anne D. Thomson appointed the defendants Ward and Hough as trustees in place of Robinson, and the indenture confirmed unto them all the lands and premises mentioned in the May, 1885, deed. It then directed that these trustees manage the premises, collect the rents and pay the expenses of management and then pay the balance of profits to Anne D. Thomson during her life; " and from and after the decease of the said Anne D. Thomson, to convey said rents and premises to the heirs and assigns of said James Thomson. It is hereby understood and agreed and hereby directed that the parties hereto shall observe and obey the provisions of the said indenture of May 11, 1885, in respect of compensation of said trustees as fully as if herein again set forth at large and that the liability of the trustees hereby appointed shall be the same, and no greater as was the liability of the original trustee, Edmund Randolph Robinson, deceased.

And the parties hereto of the second part hereby accept the trust created by said indenture of May 11, 1885, and now vested in them, and now also enter upon the performance of the duties of said trust as hereinabove provided."

Anne D. Thomson died May 6, 1923, leaving a last will and testament which was duly admitted to probate in the Surrogate's Court of New York county, and letters testamentary were duly issued to Charles M. Hough, who alone qualified as executor.

The residuary legatees of Anne D. Thomson and the trustees under the deed of trust. assert that the premises No. 49 Broadway, New York city, passed to the so-termed Parsons defendants by virtue of the residuary clause in Anne D. Thomson's will and the clause in the will of James Thomson which reads:

" *Fifteenth.* All the rest, residue and remainder of my Estate real and personal, of every name, kind and description which I may own at the time of my decease, wheresoever the same may be situate, I do give, devise and bequeath unto my beloved Wife Anne D. Thomson (daughter of George M. Parsons, of Columbus, Ohio), to have and to hold all and singular the real and personal Estate hereby devised and bequeathed unto my said Wife Anne D. Thomson, in lieu of Dower."

The plaintiffs lay claim to title and possession of the property described in the deed of May 11, 1885, by reason of the words in the recital of the grant and conveyance in the deed of trust heretofore quoted, executed by James Thomson to Robinson, as trustee, which aliened every vestige of title in James Thomson during the life of Anne D. Thomson, part of the income going to her during the life of the grantor, the balance to him, and the entire income being reserved to her on his death preceding hers, upon the death of Anne D. Thomson the premises then to be conveyed by the trustee to James Thomson, his heirs and assigns forever. This grant to the trustee cannot be construed as leaving any seizin in the grantor which could be devised. If Anne D. Thomson should die before the grantor, the deed provided for a conveyance of the reversion to him, the possibility of such reverter being a mere naked right, whether called remainder or reversion, which could not pass by his testament, since at the time it spoke (at his death) he was devoid of seizin because no reverter had taken place by reason of the continuance of the life estate in Anne.

The words of limitation in the deed, " his heirs and assigns," are in the common form used invariably in conveyances and designed to import a duty in the trustee to convey a fee to James Thomson at the termination of the life estate for Anne. The term " assigns " in the deed as corelative to heirs has not the

significance of a substitution of transferees other than heirs, but maintains its technical use as befits the formal legal terminology in which the testament is couched throughout, and its employment thus connotes merely the limitation of a fee to be conveyed to James Thomson in the contingency mentioned. A conveyancer or draftsman of instruments of title would not thus provide for a reversion to possible devisees under the will of the grantor of a trust deed, if a reversion capable of being assigned or aliened to transferees were intended to survive the original grantor. A careful drawer of such instruments affecting realty would provide for the devolution of the land unequivocally in the event of the death of such a grantor, if the grantor intended to make a substituted gift after his death, to the residuary devisees (assigns) under his testament.

The judgment and order should be reversed, with costs and an interlocutory judgment should be granted declaring that the plaintiffs and such of the defendants as are heirs of James Thomson, deceased, are entitled to the possession of the premises No. 49. Broadway, New York city; striking out the defenses in the answers of the defendants Henry Galbraith Ward and Charles M. Hough, as trustees, and of Charles M. Hough, as executor, and of the Parsons defendants, dismissing the counterclaim interposed by such defendants, and restraining defendants other than the Livingston heirs from asserting any claim to or title in the premises; and the matter remitted to the Special Term to try the issues as between the plaintiffs and the other Livingston heirs and to declare their respective rights and title in said premises, and also to direct Henry Galbraith Ward and Charles M. Hough, as trustees, to convey the premises to such parties and in such proportion as the court shall declare them to be entitled and to file and render their accounts as trustees, that the same may be judicially settled and allowed.

DOWLING and MERRELL, JJ., concur; MARTIN, J., dissents.

FINCH, J. (concurring). The action was brought to obtain a judgment directing the defendants Henry Galbraith Ward and Charles M. Hough, as trustees, to convey the premises No. 49 Broadway to the plaintiffs and certain of the defendants, the heirs of James Thomson, deceased, in the proportion to which the court should find each was entitled, and incidentally that the trustees be permitted to file and render their account and that the same be judicially settled; also to have the court ascertain and determine to whom certain funds in the hands of the defendant Hough are payable and in what proportion and amount, and that payment of the same be directed.

The supplemental complaint alleges that one James Thomson,

in contemplation of his marriage with Anne D. Parsons, on May 11, 1885, conveyed to Edmund Randolph Robinson, as trustee, certain premises known as No. 49 Broadway, in the city of New York, of which premises he was then seized in fee; that thereafter the said James Thomson and Anne D. Parsons married and Edmund Randolph Robinson, the trustee, accepted and entered upon the discharge of the trust; that Mr. Robinson, the trustee, died on July 24, 1896; that James Thomson died December 9, 1897; that on January 19, 1898, Anne D. Thomson, Henry Galbraith Ward and Charles M. Hough executed an agreement whereby the two latter were appointed trustees in place of Mr. Robinson, deceased. It is further alleged that on May 6, 1923, Mrs. Thomson died leaving a will, wherein she appointed as her executors Henry Higgins, Henry Galbraith Ward and Charles M. Hough, of whom the last mentioned alone qualified as executor. The supplemental complaint further alleges the origin of James Thomson's title in fee and that at the time of James Thomson's death his only heirs at law were the descendants of the deceased brothers and sisters of his mother, Mary Livingston Thomson. It is further alleged that on the death of Anne D. Thomson the title to the property No. 49 Broadway, the subject of the marriage settlement agreement, vested in certain of the Livingston descendants, parties hereto; that James Thomson left a will dated May 18, 1888, which was duly admitted to probate; that the defendants Ward and Hough, as trustees, entered into possession of the premises No. 49 Broadway, received and paid the rents during the lifetime of Anne D. Thomson, as provided by the trust indentures. Judgment is demanded that the defendants Ward and Hough, as trustees under the marriage settlement agreement, be directed to convey the premises No. 49 Broadway to the plaintiffs and defendants, heirs of James Thomson, in the proportion the court finds each is entitled to receive; that said Ward and Hough, as trustees, file and render their account, and that the same be judicially settled.

The answer of the defendant Hough, as executor and trustee under Mrs. Thomson's will, and the answer of the defendants Ward and Hough, as trustees, as an affirmative defense, allege that on the death of James Thomson he left no debts and left a large estate in addition to the premises No. 49 Broadway; that thereupon the purpose of the trust created in the marriage settlement agreement ceased and the said trust and any and all estate of the trustee thereunder also ceased, and the premises in question thereupon vested in fee simple in said Anne D. Thomson under the will of James Thomson; that Anne D. Thomson thereupon entered into possession of the premises as owner in fee simple

and continued in such possession and ownership during the remainder of her lifetime. In said answers there is further set up adverse possession of Mrs. Thomson for more than twenty years prior to the commencement of this action. The answer of the defendant Hough, as executor and trustee under Mrs. Thomson's will, by way of counterclaim, alleges that on the death of James Thomson, his wife, under the provisions of his will, became seized in fee simple of the premises No. 49 Broadway and entered into and continued in possession thereof during her lifetime; that by virtue of the provisions of the will of Anne D. Thomson the title to said premises vested in the devisees named in her will and named in the 18th paragraph of said answer, and in the defendant Hough, as trustee under the will of Anne D. Thomson; that said devisees thereupon entered into possession as owners thereof and continued in possession as such. Judgment is demanded declaring that Anne D. Thomson was the owner in fee simple of the said premises at the time of her death; that the defendant Hough, as executor, is entitled to the rents, issues and profits which accrued but were not paid during the lifetime of Anne D. Thomson; that defendant Hough, as trustee under the will of Mrs. Thomson, and the other devisees under her will are the owners in fee simple of the premises in question, and that said Hough, as trustee, and the defendants Mary L. Higgins, George M. Parsons, Elizabeth Parsons, Jane Parsons and Lois Parsons, as such devisees, are entitled to the rents, issues and profits from said premises that have accrued since the death of Anne D. Thomson.

The defendants, who are devisees under Mrs. Thomson's will, set up an affirmative defense and counterclaim similar to those contained in the answers hereinbefore referred to.

At Special Term a motion was made by certain of the defendants for judgment dismissing the complaint. The court sustained the contention and granted judgment dismissing the complaint on the merits, and declaring that title in fee simple and right to possession of the premises No. 49 Broadway was vested in the residuary legatees under the will of Mrs. Thomson, holding that under the aforesaid indenture of marriage settlement James Thomson reserved to himself, his heirs and assigns, a reversion in the premises which were conveyed in trust, and that said reversion passed under his will to his wife in fee simple as a part of the residuary estate.

I am in accord with the learned court at Special Term that whatever interest James Thomson had in the aforesaid premises passed under his will to his wife, Anne D. Thomson, but in my opinion the said James Thomson, by his will, gave only a life interest with certain powers of distribution to the said Anne D.

Thomson in all the property passing to her under said will, including his interest in the premises No. 49 Broadway, and that he did not give to his said wife an estate in fee simple in any of his real property. In the case of 49 Broadway, Anne D. Thomson already had a life interest therein, pursuant to the indenture of marriage settlement. Therefore, the inclusion of this property within the residuary clause of the will practically amounted only to subjecting the same to the power of distribution given to Anne D. Thomson in said will. If this construction of the will of James Thomson is correct, it follows that the title to the property in question vested in the heirs at law of James Thomson, subject to the life estate and power of distribution in Anne D. Thomson. That James Thomson, his heirs and assigns, had an estate in this property after the termination of the life estate of Anne D. Thomson therein, is expressly provided in said indenture of marriage settlement, which provided that the trustee should pay out of the net rents to said Anne D. Parsons the sum of $3,000 in two equal half-yearly payments in each year during the term of her natural life, " in order that she may enjoy the same to her separate use, exempt from the control, debts and engagements of her said intended husband * * * and the residue of the rents, income and profits to pay to the said James Thomson and his assigns during the term of his natural life and from and after the decease of the said James Thomson in the lifetime of the said Anne D. Parsons to pay the entire rents, income and profits of the said premises to the said Anne D. Parsons or her assigns during the term of her natural life, and from and after the decease of the said Anne D. Parsons to convey said lands and premises to the said James Thomson, his heirs and assigns forever." It is then provided that this provision shall not be in lieu of dower out of any other real estate of said James Thomson. Said indenture then continues: " And it is hereby also provided that in the event of the said Edmund Randolph Robinson dying or declining to act or becoming incapable of acting in the Trusts hereby created or desiring to be relieved therefrom before the same are fully determined and ended then and in such case it shall be lawful for the said James Thomson and Anne D. Parsons by any writing under their hands or after the decease of the said James Thomson for the said Anne D. Parsons by any writing under her hand to appoint some other person in the place of the said Edmund Randolph Robinson, and it is declared that upon any such appointment the said lands and premises shall be conveyed so as to vest the same in the new trustee."

The indenture by which Anne D. Thomson appointed defendants Ward and Hough trustees in place of Edmund Randolph Robinson, deceased, provided that said trustees should receive the rents

and pay the entire balance of such net profits to the said Anne D. Thomson, and after the decease of said Anne D. Thomson, convey said rents and premises to the heirs and assigns of said James Thomson. Said indenture reads as follows: " Now, Therefore, this Indenture Witnesseth, that the said Anne D. Thomson, by this instrument of writing under her hand, hath appointed and hereby doth appoint the parties hereto of the second part, Henry Galbraith Ward and Charles M. Hough and the survivor of them as trustees in the place and stead of Edmund Randolph Robinson, deceased, and hath by this instrument of writing, and doth hereby confirm unto them and the survivor of them all the lands and premises mentioned and described in said indenture of May 11, 1885, to wit: [description as in said deed]. Together with all and singular the rights, members, tenements, privileges, hereditaments and appurtenances thereto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. Hereby directing and empowering the said Henry Galbraith Ward and Charles M. Hough to have and to hold the said land and premises to them and the survivor of them to the uses and purposes declared in and by the said indenture of May 11, 1885, and hereinafter again set forth, that is to say, from and after the date of these presents, to manage said premises, and collect and receive the rents, income and profits arising therefrom, and after paying all lawful and necessary expenses connected with the management of said premises, to pay the entire balance of such net rents, income and profits to the said Anne D. Thomson * * * in each and every year during the term of her natural life; and from and after the decease of the said Anne D. Thomson, to convey said rents and premises to the heirs and assigns of said James Thomson. It is understood and agreed and hereby directed that the parties hereto shall observe and obey the provisions of the said indenture of May 11, 1885, in respect of compensation of said trustees as fully as if herein again set forth at large, and that the liability of the trustees hereby appointed shall be the same and no greater as was the liability of the original trustee Edmund Randolph Robinson, deceased. And the parties hereto of the second part hereby accept the trust created by said indenture of May 11, 1885, and now vested in them, and now also enter upon the performance of the duties of said trust as hereinabove provided." In passing, it is to be noted that the indenture appointing the new trustees in place of Edmund Randolph Robinson, deceased, was obviously intended to carry out the provisions of the original trust deed and, therefore, the heirs and assigns of James Thomson took by descent and not as purchasers.

Since a possibility of reverter is not devisable, it is necessary to inquire what estate James Thomson, his heirs and assigns, had in this property after the termination of the life estate of Anne D. Thomson therein. On the one hand, it is contended that such estate was a reversion; on the other, that it was a mere possibility of reverter. There was more here than a mere possibility of reverter. A possibility of reverter only arises when there is a condition subsequent annexed to a grant in fee. Upon the breach of the condition subsequent, a re-entry is necessary in order to revest the former estate. In the case of a possibility of reverter, therefore, the grantor has parted with all the seizin and the estate is neither alienable, descendible nor devisable. (*Upington* v. *Corrigan,* 151 N. Y. 143.) Two conditions had to happen to revest such an estate, *first,* a breach of the condition which might never happen, and, *second,* that following such breach there must be a re-entry. The deed of marriage settlement in the case at bar expressly provided that the estate was to revert to the grantor, his heirs or assigns, upon the death of the life tenant, which was certain to happen. Such an estate, therefore, was at common law a reversion and falls within the definition of a reversion in the Real Property Law (§ 39) which reads as follows: " Definition of reversion. A reversion is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of one or more particular estates granted or devised." Direct authority is not lacking. In *Doctor* v. *Hughes* (225 N. Y. 305) the facts were that the creator of the trust conveyed real property to a trustee, in trust, to pay to the use of the grantor $1,500 per annum out of the rents of the property. Upon the death of the grantor the trustee was directed to convey the premises to the heirs at law of the grantor. Both this court and the Court of Appeals held that the direction to convey to the heirs at law of the grantor was superfluous and that in accordance with section 102 of the Real Property Law the interest in the trust either remained in or reverted to the person creating the trust or his heirs. The same result is reached by considering that with the death of Anne D. Thomson, the life tenant, the purpose for which the express trust was created ceased and, therefore, that the title to the property would then revert to James Thomson, his heirs and assigns, independently of a formal conveyance by the trustees. Section 109 of the Real Property Law provides: " When the purpose for which an express trust is created ceases, the estate of the trustee shall also cease."

The case of *Watkins* v. *Reynolds* (123 N. Y. 211) was a formal conveyance of land, with a provision for reconveyance, and the

First Department, May, 1926. [Vol. 216

court there held that the duties of the trustee terminated upon the death of the life tenant and that the title, independently of a formal conveyance, vested in the heirs of the grantor.

Therefore, under the principles of the common law, as well as the statutory enactments of the Real Property Law, James Thomson, his heirs and assigns, had a reversion in this property.

By the 15th paragraph of his will, James Thomson provided as follows:

" *Fifteenth.* All the rest, residue and remainder of my Estate real and personal, of every name, kind and description which I may own at the time of my decease, wheresoever the same may be situate, I do give, devise and bequeath unto my beloved Wife Anne D. Thomson (daughter of George M. Parsons, of Columbus, Ohio), to have and to hold all and singular the real and personal Estate hereby devised and bequeathed unto my said Wife Anne D. Thomson, in lieu of Dower."

The appellants urge that the use of the word " own " shows an intention to limit what may be comprised under this language to an estate of which the testator may be seized at the time of his death. As the testator was seized of an estate in reversion, there is no doubt that it would pass under the language of paragraph 15. In addition, however, it may be said that the language used in paragraph 15 is inclusive and shows an intention clearly to include all the rest, residue and remainder of his estate of every name, kind and description, which was descendible, devisable and alienable. Section 59 of the Real Property Law provides that " An expectant estate is descendible, devisable and alienable, in the same manner as an estate in possession." Section 35 of the Real Property Law provides that "An estate, in which the right of possession is postponed to a future time, is an estate in expectancy." Section 36 of the Real Property Law reads:

" § 36. Enumeration of estates in expectancy. All expectant estates, except such as are enumerated and defined in this article, have been abolished. Estates in expectancy are divided into,

" 1. Future estates; and

" 2. Reversions,"

which labels the estate which James Thomson, his heirs and assigns, had in 49 Broadway as an estate in expectancy, and, as has already been shown, such estates are descendible, devisable and alienable. The right, therefore, that James Thomson, his heirs and assigns, had in this property after the death of the life tenant passed under the will of James Thomson to his wife.

This leads to a construction of the will of James Thomson. Under this will there are, in general, three sets of claimants: *First,*

Charles M. Hough, as executor and trustee under the will of Anne D. Thomson, and those persons who claim under her will. These claimants insist that Anne D. Thomson took an estate in fee simple. *Secondly*, the parties who urge that Anne D. Thomson only took a life estate and that the recommendation to her in reference to the charities was imperative, and that the charities are, therefore, entitled to the property; and, *thirdly*, the heirs at law and next of kin of James Thomson, who urge that Anne D. Thomson took only a life estate under the will and that, therefore, this property descended to the heirs at law of James Thomson, subject to the life estate in Anne D. Thomson and the power of distribution given to her in the will of James Thomson.

The question is not free from doubt, but the stronger reasons appear upon the side of the heirs at law and next of kin of James Thomson. The rule of construction to be applied is, of course, what did the testator intend from the language used in his will? In thus seeking the intention of the testator, effect must be given, if possible, to each and every phrase and word used. In *Keteltas* v. *Keteltas* (72 N. Y. 312, 314), EARL, J., writing for the court, said: " But the intention is not matter of speculation or arbitrary conjecture. It is sought for in the language used; and when language or a certain collocation of words has once received judicial construction, precedents are formed which are followed in later cases. It is a general rule of construction that when a testator uses technical words, he is presumed to employ them in their legal sense, and that words in general are to be taken in their ordinary and grammatical sense unless the context clearly indicates the contrary."

In *Matter of Buechner* (226 N. Y. 440, 443) CARDOZO, J., writing for the court, said: " Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. Excision is a ' desperate remedy ' (*Adams* v. *Massey*, 184 N. Y. 62, 69). It is ' only a last resort, to be availed of when all efforts to reconcile the inconsistency by construction have failed ' (*Van Nostrand* v. *Moore*, 52 N. Y. 12, 20)."

Turning then to the will of James Thomson and considering the paragraphs that have any relevancy to the matter here in controversy, we find the following:

" *Fifteenth.* All the rest, residue and remainder of my Estate real and personal, of every name, kind and description which I may own at the time of my decease, wheresoever the same may be situate, I do give, devise and bequeath unto my beloved Wife Anne D. Thomson (daughter of George M. Parsons, of Columbus,

Ohio), to have and to hold all and singular the real and personal Estate hereby devised and bequeathed unto my said wife Anne D. Thomson, in lieu of Dower.

" *Sixteenth.* I recommend my said Wife Anne D. Thomson, by any Last Will and Testament executed by her in due form of law for passing real and personal Estate, to give, devise and bequeath the whole or any part of my real and personal Estate, which is hereby devised and bequeathed unto her, among such child or children as may be born unto us, in such shares and proportions as she shall deem just and proper, having regard to the character, capacity and condition of any such child or children.

" *Seventeenth.* But if my said Wife shall die leaving any child or children by me begotten, and without exercising the power of distributing the Estate hereby devised to her as aforesaid, among our children by her own Last Will and Testament, Then and in such case, I do give, devise and bequeath the said Estate, or whatever may be the Rest, residue and remainder of the same, after the decease of my said Wife, to such child or children of mine who may survive their mother my said Wife, to be divided equally among them, share and share alike, or if there shall be but one child of mine then surviving, to such child I do then give, devise and bequeath the whole of the said Estate real and personal and wheresoever situate.

" *Eighteenth.* But if I shall die leaving no child or children by me and my said Wife begotten, or born in due and legal time after my decease, Then in such case, I recommend my said Wife, by any Last Will and Testament executed by her in due form of law for passing real and personal Estate, to give, devise and bequeath the Estate real and personal wheresoever situate hereby devised and bequeathed to her, unto the most worthy male descendant of my late Uncle Henry Walter Livingston of the Manor of Livingston, Columbia County, State of New York. And if my said Wife shall not, in her judgment, deem such a devisee desirable or expedient, Then in such case, I recommend to my said Wife, to devise and bequeath the above mentioned Estate real and personal and wheresoever situate, hereby devised and bequeathed unto my said Wife, in equal shares to and among the following benevolent or charitable corporations or Societies, to be used and applied in furtherance of the benign objects for which the said Corporations or Societies were organized:   *   *   *."

Taking up paragraph 15, which contains the gift in question, we find that the testator uses the usual words " all the rest, residue and remainder of my Estate real and personal, of every name, kind and description which I may own at the time of my decease, where-

soever the same may be situate  *  *  * " to designate his residuary estate preparatory to making a devise and bequest of the same. The respondents urge that this language may also be held to relate to the nature of the estate granted to his wife, whether for life or in fee. To attempt thus to use the words to denote the extent of the title devised would be unusual, and particularly so in the case at bar, where the will was drafted with care and with the use of legal terms obviously confined to their exact legal meaning. For instance, just what estate the testator intended his wife to have in his residuary property is shown by the most appropriate clause known to the law for the purpose, namely, a habendum clause which reads: " to have and to hold all and singular the real and personal Estate hereby devised and bequeathed unto my said Wife, Anne D. Thomson, in lieu of Dower." With such a clause it is not possible to use the words " all the rest, residue and remainder of my Estate," as denoting the nature of the estate granted, and, *secondly,* the use of the words " in lieu of Dower " in the habendum clause must necessarily be given consideration. Reasonably construed the meaning appears to be that the testator gave this property to his wife " to have and to hold  *  *  *  in lieu of Dower." This language is entirely inconsistent with the idea that the testator intended to vest in his wife the fee simple of his residuary estate. On the contrary, these are words which relate to a life use as distinguished from an estate in fee simple. Moreover, the testator did not merely state that this property was given to his wife " in lieu of Dower," but he qualified the gift itself by providing that his widow was " to have and to hold " the gift " in lieu of Dower." In connection with the use of the words " in lieu of dower " as qualifying the estate given, we at the same time find an absence of words of inheritance such as were requisite to create a fee at common law, and the absence of which would create a life estate. (*Jackson* v. *Myers,* 3 Johns. 388; *Jackson* v. *Davenport,* 20 id. 537.) While the Real Property Law of this State has provided that these words are unnecessary and that a grant or devise of real property passes all the estate or interest of the grantor or testator, yet this is only so when the intent to pass a lesser estate or interest does not appear by the express terms of the grant or devise or by necessary implication therefrom. (Real Prop. Law, § 245.) The use of the words " in lieu of dower " thus shows an intent to pass a less estate than a fee simple by express terms, and emphasizes the absence of words of inheritance. Furthermore, the testator has shown that in this very will he had in mind the use of such words of inheritance when they are needed to express his meaning, because in the 6th paragraph he bequeaths the sum of

44

$20,000 to his friend Edmund Randolph Robinson " and to his heirs, administrators and assigns forever." Furthermore, the testator had made only a few small gifts in the preceding portions of his will and had made no devises of real estate whatsoever. If the testator intended, therefore, by this paragraph, as respondents contend, to give to his widow an estate in fee simple in all his real property, the insertion of the words " in lieu of dower " would not only be surplusage but they would be contradictory, since if there was a devise in fee then the dower rights of Mrs. Thomson in all the property would be merged in the fee. This would also be practically true of 49 Broadway, since on the death of her husband Mrs. Thomson would hold the entire income in trust for her life and the remainder of the fee in the property would belong to her by the will. Such a devise in fee, therefore, even in 49 Broadway, would be inconsistent with a devise in lieu of dower, for the dower would practically be merged in the fee. The respondents urge, however, that these words need not be disregarded as surplusage or inconsistent, but can be retained by giving them the usual meaning of being used in the sense that the testator had implied that he had left all his property to his wife, instead of limiting her to dower rights. The difficulty with this contention is that the Real Property Law specifically provides that these words " in lieu of dower " have a definite meaning. Section 200 of the Real Property Law, in so far as material, reads as follows: " Election between devise and dower. If real property is devised to a woman * * * in lieu of her dower, she must make her election whether she will take the property so devised * * * or be endowed of the lands of her husband; but she is not entitled to both."

In order for there to be an election, there must be two or more rights between which the devisee may choose. In other words, " in lieu of dower " implies a choice either to take dower or to take the devise and relinquish the dower right. Such a devise in fee would be inconsistent with a devise in lieu of dower, and there could be no election possible. The entire fee simple being in Anne D. Thomson nothing would remain out of which dower could be admeasured. These words " in lieu of dower " being thus technical words, the general rule of construction presumes that the testator has employed them in their legal sense (*Keteltas* v. *Keteltas, supra*) and militates against the use of them as thus urged by the respondents. If Anne D. Thomson, however, only took a life estate, she would still have a right to dower and no election could be compelled unless an express provision in the will provided that the devise was in lieu of dower or that the right to the assertion of dower was negatived by other provisions of the will. (*Lewis* v.

*Smith,* 9 N. Y. 502.)   The words, therefore, " in lieu of dower " cannot be ignored and the only way that they can be given effect in accordance with the settled canons of construction that technical words must be presumed to be employed in their legal sense, is to construe the will as giving to Anne D. Thomson less than an estate in fee simple, and which estate would come to an end with the termination of her life.   The absence of words of inheritance in this paragraph 15 is consistent with this construction.   The court at Special Term in holding that Anne D. Thomson took an estate in fee simple felt the force of the inconsistency of the words " in lieu of dower," for he said:   " In searching for the intention of the testator, somewhat obscured as it is by the use of the words ' in lieu of dower ' in the Fifteenth paragraph   *   *   *."

The subsequent paragraphs of the will of James Thomson are likewise more in harmony with the devise of an estate to Anne D. Thomson of less than a fee by paragraph 15 than are said subsequent paragraphs of said will if an estate in fee simple is held to have been devised by said paragraph 15.   In fact it would seem as if a normal and reasonable effect only can be given to these subsequent paragraphs if paragraph 15 is construed as giving a less estate than a fee simple.   In paragraph 16 the testator recommends to his wife that by any last will and testament executed by her in due form of law for passing real and personal estate, she devise and bequeath the whole or any part of " *my* real and personal Estate, which is hereby devised and bequeathed unto her, among such child or children as may be born unto us," in such shares as she shall deem proper.   The testator thus clearly shows his intention to deal with an estate which, in his conception, was his after the life estate of his wife and to provide that out of that estate his children should take a remainder after his wife's life estate.   In the 17th paragraph this purpose and intention is made even clearer because in this paragraph the testator provides that if his wife shall die leaving any child or children of theirs and " without exercising the power of distributing the Estate hereby devised to her as aforesaid, among our children by her own Last Will and Testament," then the testator devises and bequeaths the said estate or whatever may be the rest, residue and remainder of the same after the decease of his wife to such child or children of his who may survive their mother, to be equally divided among them or, if there shall be but one child, the testator devises and bequeaths the *whole* of said estate to such child.   In this 17th paragraph the fact that the testator expressly defines the power conferred upon his wife in the previous paragraph as " the power of distributing the Estate," very strongly shows his

First Department, May, 1926. [Vol. 216

intention to give his widow a life estate only in his property. The words of Judge ANDREWS, in *Van Horne* v. *Campbell* (100 N. Y. 287, 301) show that the testator here adopted a perfectly well-settled and common form of devise: "We have referred to all the cases which we have found in this State having a direct bearing upon the point under discussion. They unite, in declaring as an undoubted principle of the common law that a valid executory devise cannot coexist with a devise of a primary fee, accompanied with an absolute disposing power in the first taker, and that an executory limitation by will, either of real or personal property, after a gift of an absolute estate, is void. An absolute power of disposition annexed to a primary devise in fee is deemed conclusive of the existence in the primary devisee of an absolute estate. Such of the cases as sustain a limitation over after a life estate, accompanied with a limited power of disposition in the life tenant, proceed upon a distinction perfectly well settled, and fall within that common form of limitation, viz., a limitation for life, with power of appointment in the life tenant, and remainder over on default of its exercise. The estate created by the exercise of the power does not take effect out of the interest of the life tenant, but out of the estate of the grantor of the power not embraced in the life interest. (See *Bradly* v. *Westcott*, 13 Ves. 445.) "

The plan of this testator's will seems a natural and logical one for the disposition of his estate. All the provisions of the will, when read together and giving weight to each portion thereof, show clearly an intention as follows: To give a life estate to his widow, and the remainder, after his wife's death, to his children either through a power of testamentary distribution, given to his wife, or by a direct devise of a remainder in default of the exercise by his wife of this power, and in the event of his dying childless, to give his wife a similar testamentary power, wholly within her discretion, to give the remainder after her life estate to the most worthy male descendant of one branch of his line or, if his wife should deem this not fitting, then, also wholly within her discretion, to divide the remainder after her life estate among the several charities named by her husband or among such of them as she should select. There is thus shown a reasonable and a consistent plan. While it so happens that this results in intestacy for the reason that the widow failed to exercise the discretionary powers given to her to dispose of the remainder after her life estate, this is because of that failure to exercise the discretionary powers given and because the testator failed in the event of these discretionary powers not being used to provide for the disposition of the remainder of his estate under these circumstances. This, however, does not

make the above a less reasonable and proper construction of the will taken as a whole and would seem to be the only construction that gives effect to all of the provisions of the will in accordance with the cardinal rules of construction that the intention of the testator is to be gathered from the whole of the will and that that construction must be adopted which gives effect to all of the language used, rather than one which disregards technical words or employs them in other than their legal sense. This construction, moreover, is borne out by the acts of Mrs. Thomson. Apparently no part of the real property was ever sold and no disposition made of the $49,000 principal and personal property which was received from the estate of her husband.

It is also significant that after the death of her husband and when, in accordance with their contention, she would have become possessed of an estate in fee simple in all of his real property, including 49 Broadway, Mrs. Thomson then executed a formal deed appointing new trustees under the trust created by the marriage settlement. This deed of appointment was presumably executed upon the advice of attorneys and with full knowledge of all the legal rights of Mrs. Thomson in the property involved. This is shown by the wording of the formal deed. This appointment of new trustees would only have been necessary upon the assumption that the indenture of marriage settlement was still valid and subsisting. Had it been assumed that Mrs. Thomson had taken a fee under the will of Mr. Thomson, she would then have been vested not only with the entire life interest in this property but also would have been entitled to the entire fee therein and, therefore, the purpose of the indenture of marriage settlement would have ceased. It would seem then that under section 109 of the Real Property Law, the purpose of the express trust having ceased, the estate of the trustee would also have ceased. The conclusion, therefore, is inevitable that the appointment of new trustees was predicated upon the idea that Mrs. Thomson did not take the fee simple of the residuary estate of her husband.

The court at Special Term has found that the difficulties of reconciling all these subsequent provisions of the will with the gift of a fee to Mrs. Thomson, which they claim to find in the first portion of paragraph 15 of the will, may be resolved upon the theory that these are in the nature of conditional limitations and that they operate to cut down the fee simple estate so claimed to have been given, so that it becomes a base or determinable fee; and reliance is placed upon *Matter of Gardner* (140 N. Y. 122). That case, however, is predicated upon an entirely different state of facts, because the gift there of the residue was " to have and to

hold the same and every part and parcel thereof to my said wife, her heirs and assigns forever * * *." By the use of this habendum clause, followed by words of inheritance, the court in *Matter of Gardner* could reach no other conclusion than that an estate in fee simple was thereby granted, and hence that if the subsequent provisions found in the will were to be effective it was necessary to hold that the fee first given to the wife was a base or determinable fee. *Matter of Gardner* also illustrates exactly what the courts have laid down as necessary to find when they apply the theory of the gift of a base or determinable fee, namely, that there must be clearly indicated an intention by words of inheritance or other like phrases, so that there is no doubt as to the intention of the testator to give in the first instance an estate in fee simple. (*Williams* v. *Jones*, 166 N. Y. 522, 539; *Clay* v. *Wood*, 153 id. 134.) This rule, however, has no application to a case such as is the case at bar, where there is no clear indication in paragraph 15 that an estate in fee simple was granted, but this paragraph at the very most is ambiguous, and the question in the case at bar is what is the intention of the testator, and not as in *Matter of Gardner* and kindred cases, where the question is, upon finding that the testator has given in unmistakable language an estate in fee simple, whether the subsequent language used in the will should be disregarded as merely a suggestion or should such language be construed into a condition subsequent, the happening of which will convert the fee simple estate theretofore granted into a base or determinable fee.

The respondents also urge that all the foregoing evidence of intention may be disregarded, since in the 16th paragraph of the will the testator, in giving a power of distribution to his wife, used this language concerning his estate: " Which is hereby devised and bequeathed unto her," as if such language enlarged the devise and bequest already made in paragraph 15, rather than as merely being descriptive thereof. In this connection it is to be noted that the testator used the same language, or the equivalent thereof, practically wherever he mentions the estate theretofore given to his wife. For instance, in the 17th paragraph, after the word " Estate," he used the words " hereby devised to her as aforesaid," and in the 18th paragraph he used the words " hereby devised and bequeathed to her," all this language obviously referring to whatever estate has been theretofore devised and bequeathed to her under paragraph 15. The court at Special Term, in starting with the assumption that the wife took an estate in fee simple, assumed the very point in issue. Each succeeding provision of the will was then examined to see if there could be found an intention

to cut down this assumed fee simple estate. The problem instead, however, was to ascertain the intention of the testator in the first instance. As already shown, the devise and bequest in paragraph 15 was of less than a fee if all the words therein used were to have a meaning in accordance with the usual and applicable canons of construction. Then instead of searching the succeeding paragraphs, which are thus acknowledged to be inconsistent with the assumption of a devise in fee simple, to see if there is sufficient to override the assumed estate in fee simple, these should have been examined to see if they were not consistent with the prior devise of a lesser estate, as indeed they are. Much reliance was then placed upon the presumption against intestacy. But this presumption can never be used to override an expressed intention, for this would be utilizing it to the length of making a new will. Moreover, as against such a presumption in the case at bar, is the equally strong presumption against disinheriting the heirs of the blood. Particularly is this true in such a case as the present. To make the most ample provision for the wife so long as she shall live but thereafter to prefer his own blood to that of his wife's relations, is a human trait which has been embodied under the presumption in favor of the blood. That the testator should recommend to his wife that in certain circumstances she should exercise her power of distribution " unto the most worthy male descendant " of his late uncle, is urged as a reason for holding that the testator had no interest in and had excluded all his other heirs, but it would seem that it might, with equal propriety, be urged that this showed an intention on the part of the testator to prefer a particular line of his blood if his wife should deem any such descendant worthy of taking the entire estate. Since Anne D. Thomson thus had an estate for life with a power of distribution, such life tenant could not, by failing to exercise said power, transform her estate into a fee.

Turning now to the claims of the charities, we find the testator uses the same word " recommend " both in the 16th and 18th clauses of his will. Thus are given sufficient instances of the sense in which the testator uses the word " recommend " to show that it was not in any sense directory, or imperatively used. Certainly in the 16th clause, where Mrs. Thomson is recommended to distribute the estate " among such child or children as may be born unto us, in such shares and proportions as she shall deem just and proper," the use of the word could not be directory, and so in the 18th clause, where the same word is used in reference to the first appointee of the power, namely, " the most worthy male descendant of my late Uncle Henry Walter Livingston," the power was not shown to be imperatively used for two reasons:

*First,* because of the use of the word " recommend; " and, *secondly,* in the sense in which the word " recommend " was used. In passing, it might be noted that as those were designated among whom the property was to be distributed, the power was a special one and not general. (Real Prop. Law, § 135.) The chief reliance of the defendant charities are certain English cases, where the English courts have gone to great lengths in holding that words of wish, expectation, entreaty, request or recommendation, addressed to a devisee or legatee, will make him a trustee, the person in whose favor the expressions in the will are used being the *cestui.* The courts of the United States have generally repudiated this rule used by the English courts and have adopted the sensible rule here also that the intention of the testator shall govern. (*Phillips* v. *Phillips,* 112 N. Y. 197; *Post* v. *Moore,* 181 id. 15.) The intention of the testator in the will in the case at bar to give a power of choice to his wife, and this power of choice and the use of the word " recommend " in connection therewith, show the clear intention to make the recommendation not imperative. The courts will execute only an imperative power in trust or trust power. (Real Prop. Law, § 157.) In the 18th clause of the will there is no devise over in case Mrs. Thomson should not exercise the discretionary special power of distribution. We have then a situation where there was no testamentary disposition of the residuary estate on the termination of the life estate in Mrs. Thomson in the event that the testator died childless. Since Mrs. Thomson failed to exercise the special power of distribution of this residuary estate, it became a part of the estate of the testator, as to which he died intestate. It is to be noted that the presumption that the testator did not intend to die intestate does not go so far as to override where the enforcement of the reasonable meaning of the language would cause intestacy. In *Matter of Tamargo* (220 N. Y. 225, 232) the court said: " The rule, that the legal intendment is that intestacy in part was not intended by a testator and is to be avoided in construing the will, is entitled to no recognition where the enforcement of the plain or paramount meaning of the language of the will would effect intestacy." The presumption against intestacy is offset by that in favor of the heirs of the blood. In *Quinn* v. *Hardenbrook* (54 N. Y. 83, 86) the court said: " Where, as in this case, the controversy is between the heir of the testator and a stranger to his blood, whose only claim is that the testator intended to take from his heir his legal inheritance and vest it in one who, but for his will, had no other claim upon it than her dower interest, which ended with her life, the claim of the heir has the advantage in this, that if there be two equally probable interpre-

tations of the will, that one is to be adopted which prefers the kin of the testator to strangers (4 Kent Com. 11th ed., 535, n. 4); or, as Lord ELLENBOROUGH expressed it, in *Doe* v. *Dring* (2 Mau. & S. 448), the rule is peremptory that the heir shall not be disinherited unless by plain and cogent inference arising from the will. To the same effect the rule is stated in *Van Kleeck* v. *Dutch Church of New York* (20 Wend. 457, 471)."

It is thus seen that Mrs. Thomson did not attempt to exercise a power of distribution given her by her husband's will, but she simply devised and bequeathed the rest, residue and remainder of her estate to the respondents herein. Her actions were thus most normal, since she thereby allowed her husband's estate to pass to his heirs at law equally, rather than that it should be given to one of them through her choice or should be distributed among charities.

The contention that Anne D. Thomson entered into possession of the premises under claim of title and acquired title by adverse possession of more than twenty years, obviously is untenable since during the life of Anne D. Thomson the title was in the trustees appointed under the aforesaid marriage settlement agreement and under the subsequent indenture executed by Anne D. Thomson, wherein provision was made for the conveyance of the property upon the death of Anne D. Thomson to the heirs and assigns of James Thomson. Under the second aforesaid indenture it was recited that the trustees " accept the trust created by said Indenture of May 11, 1885, and now vested in them, and now also enter upon the performance of the duties of said trust as hereinabove provided." From which it follows that the only title to the property was vested in the trustees, subject to the terms of the original trust deed, except as modified to provide for the payment of the entire income of the property to the beneficiary during her life. There was thus no possession adverse to the heirs of James Thomson as a matter of fact, nor could there have been such possession as a matter of law, since the heirs of James Thomson had no right of entry and possession of the premises during the life of Anne D. Thomson. As was said in *Devyr* v. *Schaefer* (55 N. Y. 446, 451): "No possession can be deemed adverse to a party who has not, at the time, the right of entry and possession."

It follows that the judgment and order should be reversed, with costs, and an interlocutory judgment granted declaring that the plaintiffs and such of the defendants as are heirs of James Thomson, deceased, are entitled to the possession of the premises No. 49 Broadway; striking out the defenses in the answers of the defendants Henry Galbraith Ward and Charles M. Hough, as trustees, and of Charles M. Hough, as executor, and of the defendants

claiming as residuary legatees under the will of Anne D. Thomson, dismissing the counterclaim interposed by such defendants and restraining defendants other than the Livingston heirs from asserting any claim to or title in the premises, and the matter remitted to the Special Term to try the issues as between the plaintiffs and the other Livingston heirs and to declare their respective rights and title in said premises, and also to direct the defendants Ward and Hough, as trustees, to convey the premises to such parties and in such proportion as the court shall declare them to be entitled to, and to file and render their accounts as trustees, that the same may be judicially settled.

Martin, J., dissents.

Judgment and order reversed, with costs, and interlocutory judgment granted as directed in opinion. Settle order on notice.